**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOHN PITCHER and CAROLYN PITCHER, | § § § | |
| *Plaintiffs*, | § § | Civil Action No. |
| v. | § § | |
| UNION CARBIDE CORPORATION; AIR & LIQUID SYSTEMS CORPORATION, successor-by-merger to BUFFALO PUMPS, INC.; ALFA LAVAL, INC., sued individually and as successor-interest to The DeLaval Separator Company; ARMSTRONG INTERNATIONAL, INC.; BARRETTS MINERALS INC.; BEACON CMP CORPORATION; BLOCK DRUG COMPANY, INC., sued Individually and as Successor-in-Interest to The Gold Bond Sterilizing Powder Company a/k/a The Gold Bond Company; BRENNTAG NORTH AMERICA, INC., sued Individually and as Successor-in-Interest to Mineral Pigment Solutions, Inc., and as Successor-in-Interest to Whittaker Clark & Daniels, Inc.; BRENNTAG SPECIALTIES LLC, f/k/a BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., sued individually and as Successor-in-Interest to Whittaker Clark & Daniels, Inc.; COLGATE-PALMOLIVE COMPANY, CRANE CO., Successor-in-Interest to Chapman Valve Company and The Swarwtout Company; DCO LLC, f/k/a Dana Companies LLC, sued Individually and as Successor-in-Interest to Victor Gasket Manufacturing Company; DAP PRODUCTS, INC.; EATON HYDRAULICS LLC, f/k/a Eaton Hydraulics, Inc., sued as Successor to Vickers Inc.; EDELBROCK CORPORATION; ELLIOTT COMPANY, f/k/a and d/b/a Elliott Turbomachinery Company; | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **DEFENDANT PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, f/k/a VIACOM, INC. SUCCESSOR-BY-MERGER TO CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION NOTICE OF <u>REMOVAL</u>** |

| | |
|---|---|
| ESTEE LAUDER, INC., a subsidiary of The Estee Lauder Companies, Inc.; | § |
| FLOWSERVE US., INC., sued as Successor to Edward Valve, Inc.; | § |
| FMC CORPORATION, sued Individually and as Successor-in-Interest to Chicago Pump Company; | § |
| FORD MOTOR COMPANY; | § |
| FOSTER WHEELER ENERGY CORPORATION; | § |
| GARDNER DENVER, INC.; | § |
| GENERAL ELECTRIC COMPANY; | § |
| GG OF FLORIDA, INC., f/k/a Higbee, Inc. f/k/a Higbee Gaskets and Sealing Products, Inc.; | § |
| GOULDS PUMPS LLC, f/k/a Goulds Pumps, Incorporated; | § |
| HOLLEY PERFORMANCE PRODUCTS, INC., | § |
| HOLLINGSWORTH & VOSE COMPANY, | § |
| HONEYWELL INTERNATIONAL, INC., f/k/a Allied-Signal, inc., sued as Ssuccessor-in-Interest to Bendix Corporation; | § |
| IMO INDUSTRIES, INC., sued Individually and as Successor-in-Interest to DeLaval Turbine, Inc.; | § |
| JOHN CRANE, | § |
| MW CUSTOM PAPERS, LLC, as Successor-in-Interest to The Mead Corporation; | § |
| MORSE TEC LLC, f/k/a Borgwarner Morse Tec LL, sued as Successor-by-Merger to Borg Warner Corporation; | § |
| DEFENDANT PARAMOUNT GLOBAL, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, f/k/a Viacom, Inc. Successor-by-Merger to CBS Corporation f/k/a Westinghouse Electric Corporation, | § |
| PFIZER INC., | § |
| REDCO CORPORATION, f/k/a Crane Co.; | § |
| R.T. VANDERBILT HOLDING COMPANY, INC., sued Individually and as Successor-in-Interest to R.T. Vanderbilt Company, Inc.; | § |
| SPECIALTY MINERALS INC., sued Individually and as a Subsidiary of Minerals Technologies Inc.; | § |

| | |
|---|---|
| SUPERIOR-LIDGERWOOD-MUNDY CORPORATION, sued Individually and as Successor-in-Interest to M.T. Davidson Company; VELAN VALVE CORPORATION, a/k/a Velan Valve Corporation; VIAD CORP., f/k/a Viad Corporation f/k/a The Dial Corporation, sued Individually and as Successor-in-Interest to Griscom-Russell Company; WARREN PUMPS, LLC, WEIR VALVES & CONTROLS USA, INC., f/k/a Atwood & Morrill; WHITTAKER CLARK & DANIELS, INC., ZURN INDUSTRIES, LLC, Individually and as Successor-in-Interest to Zurn Industries, Inc., successor to Erie City Iron Works d/b/a Keystone Boiler Works, Inc.<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § |

TO THE HONORABLE JUDGE OF THIS UNITED STATES DISTRICT COURT:

Pursuant to Title 28 U.S.C. §§ 1331, 1442(a)(1), and 1446, Defendant Paramount Global, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, f/k/a Viacom, Inc. successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation ("Westinghouse"), by and through its undersigned attorney of record, hereby gives Notice of Removal of an action filed against them in the Supreme Court of the State of New York, County of New York.  In support, Westinghouse respectfully offers the following:

**<u>Preliminary Matters</u>**

1.      On August 5, 2022, Plaintiffs John Pitcher and Carolyn Pitcher ("Plaintiffs") filed a lawsuit in the Supreme Court of the State of New York, County of New York against Westinghouse and several other defendants.  *See* Plaintiffs' Complaint, attached hereto as Exhibit A.  Plaintiffs' allegations arise out of John Pitcher's ("Pitcher") development of mesothelioma resulting from his alleged exposure to various asbestos-containing products. *See* Plaintiffs' Complaint at ¶ 3 and Exhibit "A".

2.　　Plaintiffs' Complaint only alleged that Pitcher was exposed to asbestos from "Defendants' asbestos-contaminated products, including in New York State." *See* Plaintiffs' Complaint at ¶ 3. Plaintiffs' Complaint did not specify where Pitcher is alleged to have been exposed to asbestos, whether he was exposed to asbestos from his service in the United States Navy, or whether Pitcher served aboard any Navy vessels where he is alleged to have been exposed to asbestos. As Plaintiffs' Complaint did not specify whether Pitcher served in the Navy or any vessels Pitcher served aboard, Westinghouse was unable to perform research necessary to determine whether this matter was removable.

3.　　Indeed, it was not until October 21, 2022, when Plaintiffs served their answers to interrogatories, that Plaintiffs specified, for the first time, that Pitcher was exposed to asbestos during his service in the Navy and the specific vessel Pitcher served aboard during his Navy service that he alleges contained asbestos-containing products that he was exposed to. *See* Answers to Interrogatories Directed to the Plaintiff ("Plaintiffs' Answers to Interrogatories"), attached hereto as Exhibit B.

4.　　Therefore, on October 21, 2022, Westinghouse, for the first time, was able to conduct the research necessary to determine whether this matter was removable. *See id.*

5.　　Plaintiffs allege in their answers to interrogatories that Pitcher served in the Navy between 1956-1959, during which time he served aboard the *USS Joseph P. Kennedy, Jr.* (DD-850). Plaintiffs allege that Pitcher was exposed to and inhaled asbestos fibers aboard this vessel which allegedly caused him to develop mesothelioma.

6.　　Plaintiffs' answers to interrogatories specifically provide that Pitcher "worked with and was exposed to various asbestos-containing products and materials both onboard ships and in shipyards during his employment aboard the *USS Kennedy*," including "pumps," "valves," "compressors," "turbines," "generators," "electrical components," and "motors" manufactured by Westinghouse.

7.     This Notice of Removal is timely in that it is filed within thirty (30) days of receipt of Plaintiffs' Answers to Interrogatories, from which Westinghouse first ascertained that this case is removable.  28 U.S.C. § 1446(b).

**Nature Of The Case**

8.     The case is based on Plaintiffs' allegation that Pitcher's asbestos-related disease, specifically mesothelioma, was caused by his exposure to asbestos dust and/or fibers.

9.     Plaintiffs assert failure to warn claims, along with negligence and strict liability claims against Defendants based on various theories.

**Grounds For Removal**

10.     Plaintiffs' claims stem from Pitcher's alleged exposure to asbestos through his service in the United States Navy aboard the *USS Joseph P. Kennedy, Jr.* (DD-850). Westinghouse manufactured turbines and associated equipment for use on Navy ships and at Navy installations pursuant to contracts and specifications executed by the Navy. Westinghouse confirmed that it manufactured turbines, main gear, blowers, pump drives, and related equipment aboard the *USS Joseph P. Kennedy, Jr*. Thus, the basis for this removal is that in the manufacture and sale of such equipment for the Navy, including all aspects of warnings associated with that equipment, Westinghouse was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

11.     Should Plaintiff file a motion to remand this case, Westinghouse respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

**Federal Officer Removal**

10.     As recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D. Pa. 2010), Westinghouse has a federal defense to this action. In examining virtually identical evidence submitted in the case at bar, Judge Eduardo C. Robreno found that the defendant, Foster Wheeler, raised

a colorable defense to plaintiff's failure to warn claims, *i.e.,* government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they were designed and manufactured by Foster Wheeler according to strict Navy specifications.  Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

11.    In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute.  First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Hagen,* 739 F.Supp.2d at 776.  The definition of a "person" includes a corporation. *Id.* Second, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.*  Third, the defendant must establish that the suit is for any act under color of federal office, *i.e.*, there is a causal connection between the charged conduct and asserted official authority. *Id.* Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

12.    The second and third elements require a substantial degree of federal control over defendant's work and a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Hagen*, 739 F.Supp.2d at 776.  Although set forth in the statute as two separate requirements, Judge Robreno recognized that the evidentiary similarities between the "acting under" and "causal nexus" prongs have often prompted courts to collapse them into one single requirement. *Id.* at 784 (citing *Good v. Armstrong World Indus., Inc.*, 914 F.Supp. 1125, 1128 (E.D. Pa

1996) ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiff's claims and the conduct taken pursuant to direction from a federal officer.")).

13.     What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case.  Like the *Hagen* court, federal courts across the country, including the Third Circuit, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to detailed and strict government specifications. *See Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d Cir. 2016) (reversing lower court's grant of remand and finding government contractor defense "colorable," meaning that the defense was legitimate and could reasonably be asserted, given the facts presented and the current law); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (reversing lower court's grant of remand and finding Foster Wheeler satisfied federal officer removal statutory requirements); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207 (4th Cir. 2017) (reversing lower court's grant of remand and ruling Foster Wheeler's evidence established colorable government contract defense to plaintiff's failure to warn claims); *Cuomo v. Crane Co.,* 771 F.3d 113 (2d Cir. 2014) (Crane Co. provided sufficient evidence that easily cleared the low threshold for asserting a federal contractor defense); *Zeringue v. Crane Co.,* 846 F.3d 785, 789-90 (5th Cir. 2017) (section §1442(a)(1) is a "pure jurisdictional statute" that permits a federal defense "to serve as the federal question that endues the court with jurisdiction"); *Leite v. Crane Co.,* 749 F.3d 1117 (9th Cir. 2014) (plaintiff's failure to warn claims and defendant's government contractor defense is one for the federal and not state court to decide); *Ruppel v. CBS Corporation,* 701 F.3d 1176 (7th Cir. 2012) (reversing lower court decision to remand and finding removal proper where Westinghouse established through affidavits that it had a colorable government contractor defense to plaintiff's claims).

14.     The predominant view holds that "a colorable federal defense need only be plausible." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir.2010); *see also Ruppel*, 701 F.3d at 1182.

In the context of a "failure to warn" case, the defendant need not show that the government expressly barred or broadly preempted the inclusion of asbestos warnings on its products. *See Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431, 438 (5th Cir.), *cert. denied*, 531 U.S. 919 (2000) (government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government).

15.     As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "'continuous back and forth' between the contractor and the government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.*

16.     In designing, manufacturing, and supplying the turbines and related equipment at issue in this case to the Navy, Westinghouse acted under the detailed and ongoing direction and control of one or more federal officers.  More specifically, Westinghouse manufactured and designed such equipment in accordance with precise, detailed, specifications promulgated by Navy Sea Systems Command. Moreover, an Inspector of Naval Machinery ("INM"), who was resident at Westinghouse's manufacturing facility, personally oversaw the manufacturing process and enforced compliance with the Navy's design specifications.  Further, the Westinghouse Navy equipment in question was subject to various tests and trials supervised by the Navy before it was approved for use on military vessels.  In sum, all relevant aspects of the design and manufacture of the turbines and/or related equipment were subject to close, detailed, and ongoing supervision and control by the Navy and its officers.

17.     There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Westinghouse that was not known to the United States and the Navy.

18.     Nowhere is it required that a Defendant produce physical contracts to prove the government's extensive direction and control over product specifications to satisfy the requirements of § 1442(a)(1).  To promote judicial efficiency and consistency, the central purpose behind MDL-875, this Court should defer to the decision made by the MDL court in *Hagen* and uphold removal.

19.     A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand.  28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976).  The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1).  *Willingham v. Morgan*, 395 U.S. 402, 405 (1960); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("right of removal is absolute for conduct performed under color

of federal office"); *Kolibash v. Comm. on Legal Ethics*, 872 F.2d 571, 576 (4th Cir.1989) ("right of removal conferred by § 1442(a)(1) is to be broadly construed."). The removing defendant "need not win his case before he can have it removed" nor even establish that the defense is "clearly sustainable". *See Ripley*, 841 F.3d at 210 (citing *Willingham*, 395 U.S. at 407).

20.     Westinghouse is not required to notify and obtain the consent of any other defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994)

21.     As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon defendant are being filed with this Notice of Removal.

WHEREFORE, Defendant Paramount Global, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, f/k/a Viacom, Inc. successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation removes this action pursuant to 28 U.S.C. §1442(a) and in conformance with the requirements set forth in 28 U.S.C. § 1446.

Dated: Newark, New Jersey
        November 17, 2022

Respectfully submitted,

**TANENBAUM KEALE LLP**

Dennis E. Vega, Esq.
Three Gateway Center, Suite 1301
100 Mulberry Street
Newark, New Jersey 07102
(973) 242-0002 (Tel.)
(973) 242-8099 (Fax)
dvega@tktrial.com
*Counsel for Defendant*
*Paramount Global*

cc:  All Known Counsel (via ECF and/or Email)